CLOUD & SHACKELFORD vs. HARTRIDGE AND HARTRIDGE, ADM'RS.

1. When cotton is weighed by ware-house men, and an account of the weights is rendered the storer, their books and not his, are the best evidence as to the weights.

2. Notwithstanding temporary administrators, or such as have no authority to sell cotton, and appropriate the proceeds to the acceptances of their intestate on drafts drawn by the owner of the cotton; still, if they notify the owner that they shall do so, and he acquiesce in the arrangement, he will be bound by it; and if sued for the cotton, they could plead and prove that the proceeds had been properly applied.

Assumpsit for cotton reclamations, in Spaulding superior court. Tried before Judge CABANISS, at May Term, 1858.

Charles Hartridge, of Savannah, in his lifetime, accepted two drafts for plaintiffs in error, one amounting to

$13, 074 04; and the other to $13,074 03, both at thirty days. These acceptances were made on the faith and credit of 605 bales of cotton, consigned to him by plaintiffs in error. Hartridge died before the maturity of the drafts; temporary letters of administration on his estate were granted to defendants in error, who informed the drawers, Cloud & Shackelford, by letter, that the drafts must be paid at maturity, and if funds were not otherwise furnished, they should sell the cotton. To this letter, Cloud & Shackelford made no reply. The cotton was sold and the nett proceeds amounted to $24, 455 95, and account of sales transmitted to the defendants. The plaintiffs paid the drafts in full at maturity, amounting to
$26,199 59

Cr. by nett proceeds of 605 bales cotton,      24,455 95
_____
Due estate of Charles Hartridge,              $1,723 64

And to recover this amount, the defendants in error brought this action.

The defendants in the court below pleaded that the plaintiffs had no authority to sell said cotton in payment of said drafts—that Hartridge, their intestate, died before their maturity, and plaintiffs were under no legal obligation to pay the same until the expiration of twelve months from the grant of administration. They further pleaded, that the account of weights of said cotton as rendered by the plaintiffs was not correct—that said cotton weighed some six thousand pounds more than appeared by the account rendered by them.

At the trial, after plaintiffs had closed, defendants went into their defence, and amongst other testimony offered in evidence, their books, containing the entry and account of the number and *weight* of the bales of cotton consigned by them to the intestate. The court rejected the evidence, holding that said entries were inadmissible, and defendants excepted.

The court charged the jury amongst other things, that it was incumbent on the plaintiffs to prove their account sued on—that the acceptance of the drafts by their intestate created a liability, and that his administrators were not subject to suit thereon until twelve months after grant of letters; but they were not bound to wait that time before paying the drafts, but might pay them sooner if they were in funds, &c.

That as temporary administrators, plaintiffs had no right to sell the cotton; but if they notified defendants that they would sell the cotton to meet the drafts at their maturity, and defendants made no objection, and they afterwards sold the cotton and rendered an account of sales, and defendants assented to and acquiesced in said sale, and used the account of sales rendered in evidence, then they were bound by said account thus rendered and accepted, and were estopped from denying its correctness.

The jury found for the plaintiffs fifteen hundred and thirty-five dollars and fifty-nine cents ($1535 59.) Whereupon defendants moved for a new trial on the following grounds:

1. Because the court erred in excluding defendants books of account offered in evidence.

2. Because the verdict is contrary to law, the evidence, and charge of the court.

3. That the charge of the court as above stated was erroneous.

4. That the court erred in charging the jury upon an assumed state of facts.

The court refused the motion for a new trial and defendants excepted.

GREEN & MARTIN, for plaintiffs in error.

ALEORD & MOORE, contra.

By the Court.—LUMPKIN, J., delivering the opinion.

1. The court was manifestly right in refusing to permit the defendants to prove by their books the weight of the cotton forwarded to Hartridge. The entries were made from an account of the weights furnished by the warehouse men, who weighed the cotton. Their books, if they kept books, as doubtless they did, and if not, their testimony, were better than the books of the defendants. At any rate, defendants failed to make it appear that the higher evidence did not exist; and the presumption is that it did.

2. Hartridge having died after the cotton was received, his temporary administrators notified the defendants that they should be compelled to sell the cotton to meet the drafts drawn upon it. No objection was made. They did sell it, and transmitted to the defendants an account of sales. No complaint was made. When suit was brought to recover the over-advance after giving the defendants credit for the cotton, the defendants gave this very account of sales in evidence. They offer no proof to impeach the *bona fides* of the sale. On the contrary, the plaintiffs prove that the cotton was well sold.

The judge charged the jury that the plaintiffs had a right to infer from the silence of the defendants, that they acquiesced in the proposed sale; and that the account, upon the facts in this case, was conclusive against the defendants. All of which is excepted to.

It is rather difficult to comprehend the position of the defendants. They offered the account of sales rendered by the plaintiffs. And if they had not, what would have been the result? Instead of a recovery for the excess only, the plaintiffs would have obtained judgment for the full amount of the drafts; leaving the defendants to look after their cotton in Savannah. The last thing, perhaps, they would desire to do.

Well, suppose it be conceded that the temporary administrators had no right to sell the cotton, and they certainly

could derive no authority to do so from their office; still, if sued, they could plead and prove that the proceeds of the cotton was properly applied; and no recovery could be had against them. Of what avail, then, is the complaint that they had no right to sell defendants' cotton? There was the strongest moral obligation to appropriate this cotton to the payment of these drafts; and we confess we are unable to appreciate the merits of this defence.

If, as it is stated outside of the record, there was unreasonable loss in the re-weighing of this cotton, that would depend upon the accuracy of the ware-house men at Griffin, and Mr. Sullivan at Savannah; and this was a legitimate subject of enquiry. I need not remark on the loss in the weight of cotton, especially that which is picked and packed early in the season. Between this country and Liverpool it is said to amount sometimes to 60 or 70 lbs. on the bag, notwithstanding the transportation is by water. When forwarded by land the difference is greater.

Upon the whole, we see no reason for disturbing this judgment.

Judgment affirmed.